1
2
3
4            UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
5                 AT TACOMA

6   TIM S.,

7                      Plaintiff,          Case No. 3:22-cv-05508-TLF

8          v.                              ORDER REVERSING AND
                                           REMANDING DEFENDANT'S
9   ACTING COMMISSIONER OF SOCIAL          DECISION TO DENY BENEFITS
    SECURITY,
10
                      Defendant.
11

12          Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13   defendant's denial of plaintiff's application for disability insurance benefits ("DIB")

14   Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule

15   MJR 13, the parties have consented to have this matter heard by the undersigned

16   Magistrate Judge. Dkt. 3. Plaintiff challenges the ALJ's decision finding that he was not

17   disabled. Dkt. 1, Complaint.

18                            ISSUES FOR REVIEW

19      A. Whether the ALJ provided clear and convincing reasons for
           discounting plaintiff's subjective symptom testimony.
20
        B. Whether the ALJ provided germane reasons for rejecting plaintiff's
21         wife's testimony.

22      C. Whether the ALJ provided legally sufficient reasons for finding the
           opinion of consultative examiner, Dr. Richard Coe unpersuasive.
23
                          PROCEDURAL BACKGROUND
24
25
                                        1

On May 18, 2020, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of February 25, 2017, and with coverage continuing through December 31, 2022. AR 15, 42, 187-88. Plaintiff's application was denied upon initial review and upon reconsideration AR 79-107. At plaintiff's request, Administrative Law Judge ("ALJ") David Johnson held a telephone hearing on March 4, 2022. AR 37-78. On March 30, 2022, ALJ Johnson issued a decision denying plaintiff's disability benefits. AR 15-32.

The ALJ found that the work history reports indicate plaintiff received earnings for at substantial gainful activity levels from February 25, 2017 (plaintiff's alleged disability onset date) through May 26, 2017. AR 17-18. Thus, the ALJ found plaintiff not disabled during that time. AR 18. The ALJ further found plaintiff had the severe impairments of degenerative disc disease, radiculopathy, herniated nucleus pulposis, osteoarthritis, chronic pain syndrome, heart disease, hypertension, obesity, post-traumatic stress disorder ("PTSD"), and depression. *Id*.  Plaintiff is a combat veteran with the United States Army, and has been assessed by the Veteran's Administration to have 100% disability. AR 444-447.

However, the ALJ found plaintiff did not meet or equal the severity of the relevant listings. AR 18-19. The ALJ found plaintiff has the residual functional capacity ("RFC") to perform light work that does not require exposure to vibration, hazards, or extreme cold; that consists of simple tasks; that is the same tasks over and over; and that does not require more than occasional, superficial interaction with the general public or coworkers. AR 21. The ALJ found plaintiff unable to perform any past relevant work but there were jobs in the national economy plaintiff could perform. AR 30-32. Thus, the

ALJ found plaintiff did not meet the criteria for disability from February 25, 2017, through March 30, 2022, the date of the ALJ's decision. AR 32.

On May 13, 2022, the Appeals Council ("AC") denied plaintiff's request for review making the ALJ's March 30, 2022 decision the final decision of the agency. AR 1-6. Plaintiff seeks this Court's review of the ALJ's decision.

<u>STANDARD</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court also must consider the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

**A. Plaintiff's Statements Regarding Subjective Symptoms**

Plaintiff argues the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony about his symptoms and functional limitations. Dkt. 8 at 4. Plaintiff further argues that evidence in the record supports, not undermines, plaintiff's testimony. Specifically, plaintiff contends that: 1) the objective evidence, including MRI

findings, support plaintiff's testimony about his pain; 2) notations of "no acute distress" do not properly describe a chronic condition; 3) the ALJ failed to consider plaintiff's reasons for failing to get treatment during the relevant period; 4) plaintiff's activities of daily living are not inconsistent with his limitations and do not make up a substantial part of his day; and 5) the evidence does not support the ALJ's assumption that plaintiff was "disingenuous" about his work activity. *See* Dkt. 8 at 4-11.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling ("SSR") 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms. . . ." *Id*. Once the claimant meets this first step, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . . ." *Id*.

Where plaintiff has presented objective evidence to meet the first step and there is no evidence of malingering, the ALJ can only reject the severity of plaintiff's testimony by providing "specific, clear, and convincing evidence" supported by substantial evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 1163.

Here, the ALJ found plaintiff's medically determinable impairments could "reasonably be expected to cause some of the alleged symptoms to some agree." AR 21. "However, the weight that can be given to claimant's symptom reports is undermined for the reasons discussed throughout this decision[,]" citing throughout that "[i]nconsistencies undermine the weight that can be given to the claimant's symptoms." *Id*. at 22, 23, 24. The ALJ did not find, nor did the Commissioner argue, that there was evidence of malingering. Thus, the ALJ must provide specific, clear, and convincing reasons for finding that the intensity, persistence, and limiting effects of his symptoms and limitations are not consistent with the medical and other evidence. *Ghanim*, 763 F.3d at 1163.

Plaintiff testified at the hearing that he left work for General Dynamic in 2017 because his body couldn't take the wear and tear on his back, feet, and shoulders." AR 48. He testified that due to his two heart attacks, he gets shortness of breath when he walks too much, he needs to take breaks by sitting down or learning against something. AR 58-59. He stated that his back pain gets worse from standing or sitting in a straight up office chair too long (more than 20 minutes). AR 59. He can stand for about 20 minutes and sit for 20 minutes before having to change positions. AR 59-60.

Plaintiff also testified that he cannot lift his arms above his right shoulder due to a rotator cuff impairment; has problems moving his wrists up and down; and has daily knee pain which is most painful when sitting. AR 63-65. Even with a CPAP machine for sleep apnea, he wakes several times a night due to pain and nightmares 5-6 days a week related to his military deployment. AR 66-69. He cannot be around loud noises

due to PTSD; does not like people getting close to him; lacks energy, and his memory and concentration are impaired due to depression. *Id*.

<u>Lack of Objective Medical Evidence</u>

Plaintiff argues the ALJ "acknowledged" plaintiff's MRI results but noted that, physical examinations had been "primarily unremarkable and inconsistent with the degree of limitation asserted." Dkt. 8 at 6 (citing AR 25-26). Specifically, plaintiff argues the ALJ improperly relied on a June 2017 treatment note noting plaintiff had normal range of motion in the spine, normal and full strength, mostly normal neurological findings, but tenderness in the lumbar spine and positive straight leg raising test. *Id*. (citing AR 26; 562).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). In addition, treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin*, 763 F.3d at 1164.

Here, the record is not lacking in objective medical evidence consistent with plaintiff's subjective reports of pain.[1] There are progress notes dated June 26, 2017, from Neospine noting that plaintiff had lower back pain from a motor vehicle accident on March 2, 2016. AR 559. Notes indicated that there was a failure of conservative treatment including chiropractic care and lumbar ESI with no change in pain and an MRI from April 16, 2016. *Id*. The record also includes treatment notes for chiropractic care noting that "once he has been released from passive care, he may be rateable for permanent impairment." AR 628.

Plaintiff cites to a June 28, 2017 MRI which shows plaintiff's L2-3, L3-4, L4-5, and L5-S1 discs are desiccated. AR 558. The MRI shows: a disc bulge with a central/LEFT paracentral disc protrusion or extrusion impressing upon the thecal sac and mild central canal stenosis at L2-3; a posterior disc bulge with a central annular tear, bilateral fact arthropathy, mild central canal and bilateral neuroforaminal stenosis at L3-4; a disc bulge with a central disc protrusion and a central annular tear posteriorly, bilateral facet arthropathy, mild central canal stenosis, mild bilateral lateral recess stenosis, and mild bilateral neuroforaminal stenosis at L4-5; and a posterior disc bulge with a posterior central annular tear and no stenosis at L5-S1. *Id*.

In addition, from 1988 through 2015, plaintiff served in the United States Army as an infantry soldier, rising to the rank of Sergeant Major.[2] AR 223. The Veteran's Administration assessed plaintiff with 100% service-connected disability related to his

---

[1] While plaintiff alleges pain from other impairments, plaintiff's argument relates to pain from his back. *See* Dkt. 8 at 6, Dkt. 10.

[2] He subsequently worked as an instructor for a defense contractor from 2016 through 2017. AR 207; 223.

1   back pain (lumbar strain, degenerative arthritis, and spinal fusion), left knee

2   patellofemoral pain syndrome with shin splints, right ankle lateral collateral ligament

3   sprain, right shoulder rotator cuff tendonitis, bilateral hip pain, bilateral wrist cubital

4   tunnel syndrome/ de Quervain tendonitis, and myocardial infarction with stable angina,

5   among other impairments. AR 447.

6        The ALJ asserts, however, that plaintiff's testimony regarding pain is inconsistent

7   with the treatment record. AR 23. The ALJ cites the June 17, 2017 treatment notes to

8   support his finding of inconsistencies with the medical record including: normal

9   musculoskeletal ranges of motion including lumbar range of motion, normal strength,

10  normal sensory sign, normal gait, and ability to walk tandem, heal, and toe walk. The

11  examination also noted a positive straight leg raise and Babinski sign tests.[3] *Id*. The ALJ

12  also cited a May 2020 primary care telephone appointment where plaintiff reported his

13  back was "about the same." AR 26 (citing AR 384-85). However, the provider did not

14  examine or assess plaintiff's physical issues since it was a telephone appointment. *Id*.

15       The ALJ failed to explain why these limited medical treatment records

16  contradicted or were inconsistent with the functional limitations that plaintiff alleges are

17  caused by his back pain, given plaintiff's MRI and positive straight leg raise and

18  Babinski sign tests. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (instructing

19  ALJ's to consider all the evidence in the record when evaluating the intensity and

20  persistence of symptoms after finding a medically determinable impairment that could

21

22  [3] A straight leg test is a fundamental maneuver during the physical examination of a patient with lower
    back pain to assess for lumbosacral nerve root irritation. *Straight Leg Raise Test* - StatPearls - NCBI

23  Bookshelf (nih.gov). A Babinski sign test is done as part of a routine neurological exam to determine the
    integrity of the corticospinal tract ("CRT"). *Babinski Reflex* - StatPearls - NCBI Bookshelf (nih.gov). A

24  positive sign suggests damage to the CRT. *Id*.

25

reasonably be expected to produce symptoms); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why they discounted claimant's symptom claims); *Ghanim*, 763 at 1164 (stating that treatment records can not be cherry-picked and must be considered in light of the overall diagnostic record).

Therefore, given the objective medical evidence in this case, the ALJ erred by rejecting plaintiff's testimony regarding disabling back pain based on inconsistency with the medical evidence without further explaining why he credited the limited medical notes over the positive objective testing. As such, the ALJ's reasoning was not specific, clear, or convincing.

No Acute Distress

Plaintiff also argues that the ALJ rejected plaintiff's testimony due to lack of acute distress. Dkt. 8 at 7. Specifically, plaintiff argues that the term "no acute distress" is not significant where an individual has a chronic condition. *Id*. (citing *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017); *Ekola v. Colvin*, No. 2:13-CV-1812-HRH, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014); and *Cruz v. Berryhill*, No. ED CV 17-2259-PLA, 2018 WL 4616460, at *7 (C.D. Cal. Sept. 24, 2018)).

In *Combs*, the Eight Circuit Court of Appeals found that the ALJ erred by relying on his own interpretation of what "no acute distress" meant in terms of plaintiff's ability to function in the workplace when assessing the medical opinion evidence. *Combs*, 878 F.3d at 647; *see also Ekola*, 2014 WL 4425783, at *6 (concluding that a physician's notation that plaintiff looked healthy and was not in acute distress is meaningless in assessing plaintiff's testimony where the condition is chronic, not acute, because acute means having a rapid onset and a short course); *Cruz v. Berryhill*, 2018 WL 4616460, at

1     *7 (where plaintiff described continued pain and exhibited tenderness to palpation with

2     decreased range of motion, the notation of "no acute distress" simply means that she

3     presented with continued back pain but "no *acute* distress"); *but see*, *Astir F. v. Comm'r*

4     *of Soc. Sec.,* No. C21-1350-MAT, 2022 WL 2192922, at *3 (W.D. Wash. June 17, 2022)

5     (distinguishing where the ALJ considered evidence of plaintiff's lack of acute distress

6     during physical examination findings to find that the medical evidence undermined

7     plaintiff's symptom testimony, rather than opinion evidence like in *Combs*); *Jennifer H.*

8     *v. Comm'r of Soc. Sec.*, No. C20-6249-MAT, 2021 WL 5415282, at *4 (W.D. Wash.

9     Nov. 19, 2021) (same).

10        Based on the June 28, 2017 examination, the ALJ noted plaintiff reported

11     "significant pain levels and limitation, but, inconsistently, the examination showed him to

12     be in no acute distress . . . ." AR 23. The ALJ cited additional reasons from the June 17,

13     2017 treatment notes to support his finding of inconsistencies with the treatment notes

14     including: normal musculoskeletal ranges of motion including lumbar range of motion,

15     normal strength, normal sensory sign, normal gait, and ability to walk tandem, heal, and

16     toe walk, but noted a positive straight leg raise and Babinski sign tests. *Id*. However, the

17     Court concluded, *supra*, that the ALJ failed explain why these medical treatment records

18     contradicted or were inconsistent with plaintiff's testimony regarding the functional

19     limitations from his back pain, given the objective medical tests, including plaintiff's MRI

20     and positive straight leg raise and Babinski sign tests.

21        The ALJ also cites an August 8, 2017 annual physical examination assessing

22     plaintiff with chronic low back pain after a motor vehicle accident that is being treated by

23

24

25

Neo spine outside the VA. AR 23-4 (citing 351-57). However, this document does not appear to be assessing plaintiff's back pain, as it is being treated outside the VA.

Therefore, under the circumstances in this case, the ALJ's reliance on notations in the record of "no acute distress," without any explanation as to why it contradicts plaintiff's allegations with respect to his limitations from his chronic back pain is not specific, clear, and convincing evidence to reject plaintiff's testimony. *See Mary L.J. v. Comm'r of Soc. Sec.,* No. C22-0709-MAT, 2022 WL 17787921, at *5 (W.D. Wash. Dec. 19, 2022) (concluding the ALJ erred by rejecting plaintiff's symptom testimony based on notations of "no acute distress," where the ALJ failed to specify what limitations were inconsistent or identify how those notations affected plaintiff's ability to function in the workplace).

Lack of Treatment

Plaintiff argues that the ALJ improperly rejected plaintiff's testimony due to a lack of medical treatment without considering plaintiff's reasons. Dkt. 8 at 8. Plaintiff states that he received non-VA urgent/acute treatment for his myocardial infarction and motor vehicle accident, including chiropractic care, but had difficulty resuming his routine treatment with the VA. *Id*. Plaintiff contends that the VA struggles to meet veterans needs, which were "exacerbated" by the Covid 19 pandemic. *Id*. In addition, plaintiff cites that the VA facility where he received his treatment closed, he got lost in the system, and he had trouble reconnecting with the VA. Dkt. 8 at 9 (citing AR 55-56); Dkt. 10 at 3 (citing 471, 474-475, 479, and 2324). Plaintiff further argues that "his pain coupled with his irritability dealing with people due to PTSD and depression made it all the more difficult for him seek out and obtain the care needed." Dkt. 8 at 8.

The ALJ noted that the medical care sought or needed is inconsistent with the degree of limitations asserted by plaintiff. AR 23. The ALJ notes that a July 11, 2017 examination showed that plaintiff's leg symptoms were "very minimal" and noted that he failed conservative therapy (chiropractic) and he was recommended to follow-up for a surgical consultation but there was no record of a surgical consultation. *Id*. The ALJ further noted that plaintiff failed to attend a February 2019 appointment and "did not seek or need care until May of 2020" despite notices from the VA in May, June, and July 2019. AR 24. The ALJ questioned plaintiff about why he did not engage in treatment during the last few years and recognized in the decision the reasons articulated by plaintiff in his testimony. AR 25. The ALJ stated that his testimony does not explain the lack of need for treatment and his lack of treatment is "inconsistent with the degree of bother and limitation the claimant asserts he was experiencing." *Id*. However, the ALJ failed to explain why he did not credit plaintiff's reasons. AR 25.

The Administration will not find that a claimant's symptoms are inconsistent with the evidence in the record on the basis that the frequency or extent of treatment sought by an individual is not comparable with the degree of the alleged limitations "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2016 WL 1119029; *see also*, *Nichols v. Califano,* 556 F.2d 931, 933 (9th Cir. 1977) (stating that a claimant "need not submit to all treatment, no matter how painful, dangerous, or uncertain of success, merely because one physician believes that a remedy may be effective").

In this case, plaintiff provided good explanations, for his failure to obtain treatment during the relevant period. However, the ALJ did not explain why he rejected plaintiff's explanations.[4] In addition, the ALJ also found plaintiff suffered from the severe impairments of depression and PTSD. Plaintiff testified that he felt abandoned and "crappy" about the way he was treated by the VA. AR 55. He did not get notification that the Federal VA clinic closed and kept calling and calling. AR 56. He testified that he was out of his heart medication for over a year. AR 57. When the ALJ asked why, he didn't reach out elsewhere, he stated that he "was just trying to deal with things myself . . . and it took my wife to step in and say, hey, you need to . . . get back in touch with the VA because she found out I wasn't taking my medicine." AR 57.

"[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Matheney v. Astrue*, No. 11CV5239-RBL-JRC, 2012 WL 1158641, at *3 (W.D. Wash. Feb. 29, 2012), *report and recommendation adopted*, No. 11-CV-05239 RBL, 2012 WL 1162440 (W.D. Wash. Apr. 6, 2012) (assuming failure to comply with treatment is willful is illogical because person suffering from mental illness may not be aware of their needs).

Therefore, under the circumstances in this case, lack of treatment is not a specific, clear, and convincing reason for rejecting plaintiff's subjective symptom testimony.

---

[4] Throughout the ALJ's decision, the ALJ appears to seek examples of inconsistencies within plaintiff's testimony stating that "[i]nconsistencies undermine the weight that can be given to the claimant's symptoms reports" However, SSR 16-3p, 2016 WL 1119029, clarifies "that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."

1    Activities of Daily Living

2          Plaintiff argues that the activities of daily living cited by the ALJ do not undermine

3    his testimony because he did not spend a substantial part of his day engaged in

4    pursuits involving functions that are transferable to a work setting. Dkt. 10 at 9-10.

5    Plaintiff further argues that he testified to problems/limitations in his ability to perform

6    those activities. Dkt. 8 at 10.

7          Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that

8    the mere fact that a plaintiff has carried on certain daily activities . . . does not in any

9    way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625,

10   639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). An

11   ALJ may discount a claimant's testimony based on daily activities that either contradict

12   their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495

13   F.3d 625, 639 (9th Cir. 2007). *Id*. (citation omitted).

14         In discussing plaintiff's activities of daily living, the ALJ found that his activities

15   are inconsistent with his testimony. AR 22. The ALJ noted plaintiff watched TV,

16   managed his hygiene, and prepare breakfast for himself and his mother, who lives with

17   him and his wife. *Id*. The ALJ found inconsistent plaintiff's statement that he provides his

18   mother a little assistance, such as helping his mother out of the car and to bed and

19   taking her to appointments, with his statements that he is his mother's caregiver on

20   other occasions. *Id*.

21         The ALJ noted plaintiff's ability to drive was inconsistent with his testimony that

22   his concentration and memory are not good. *Id*. However, with respect to his limitations,

23   plaintiff reported that he could not stand for more than 45 minutes to an hour at a time

24

25
                                                14

and walking 1000 feet to his mailbox is difficult. AR 252. Sitting too long is difficult

because he needs to keep his feet elevated. *Id*. He lies down with his feet elevated

most the time. *Id*. At times his balance is lacking. AR 256. Bending to pull up his pants

and showering is difficult. He holds on to the wall and soap dish to shower. *Id*. He tries

to help his mom with meals. AR 253. His brother helps too. *Id*. He takes his mother to

doctor's appointments, with either his brother or his wife. AR 256.

"The ALJ must make 'specific findings relating to [the daily] activities' and their

transferability to conclude that a claimant's daily activities warrant an adverse credibility

determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted); *see*

*also Alicia P. v. Comm'r of Soc. Sec. Admin.,* No. 4:22-CV-05034-SAB, 2023 WL

1975232, at *4 (E.D. Wash. Feb. 13, 2023) (concluding the ALJ's reliance on activities

of daily living improper where ALJ failed to appreciate the impact that the

"accommodations" would have on her ability to engage in full-time employment);

*Caceres-Marchan v. Comm'r of Soc. Sec.,* No. 1:16-CV-3036-RMP, 2017 WL 1756258,

at *9 (E.D. Wash. Mar. 29, 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir.

2014) (activities of daily living that require flexibility regarding rest periods or assistance

from other persons are generally not transferable to a work environment)).

As such, the activities cited by the ALJ to discount plaintiff's testimony are not

clear and convincing reasons to discount his testimony, in the absence of the ALJ's

consideration the plaintiff's testimony of the limitations/accommodations necessary.

The ALJ further cited a single progress note from a July 2018 nutrition counseling

session noting that plaintiff stated that he was taking his lunch to work. AR 23 (citing AR

343). When questioned at the hearing, plaintiff noted that it might have been when was

overseeing some work on one of his rental properties. AR 51. Plaintiff stated that he

would "open the door" for the worker's and "make sure stuff was getting done." *Id*. He

stated that he has done simple maintenance on his two other rental properties such as

putting in light bulbs or doorknobs. *Id*. Based on the notation in the record, the ALJ

speculated that his "discussion of this work activity with his medical provider indicates

he engaged in it on a regular basis, treating it like a job." AR 23. The ALJ further noted

that "[i]nconsistencies undermine the weight that can be given to the claimant's

symptom reports." *Id*. However, the ALJ failed to provide specific findings on how this

activity contradicted his testimony or is transferable to the workplace. As such, this

reason alone is not a specific, clear, and convincing reason to discredit plaintiff's

subjective symptom testimony.[5]

Work Activity

Plaintiff argues that the ALJ claimed that plaintiff worked a month or two after his

alleged onset date of February 2017, based on his earnings statements to undermine

his symptom testimony. Plaintiff states that "[i]t is not clear why confusion about two

months work would undermine his symptom testimony." Dkt. 8 at 11.

The ALJ noted that the earnings show income until April or May 2017. AR 17.

The ALJ noted that, when asked about the difference, plaintiff testified that it was

probably for travel expenses and, when asked why it was reported as taxable income,

plaintiff stated that he may have got his dates wrong and worked a month or two longer.

AR 17; AR 50.

---

[5] The ALJ also found that his testimony that he hasn't worked since 2016 is inconsistent with other evidence that he worked into 2017. AR 22. However, the ALJ did not provide a citation for the basis of this finding.

16

The ALJ found plaintiff not disabled from February 25, 2017, through May 26, 2017. AR 18. However, the ALJ further noted that he could not give weight to plaintiff's testimony because it was inconsistent and lacked recall. *Id*. The ALJ noted that, his self-reports cannot be given weight and gave greater weight to the earning statements. *Id*. It is unclear whether plaintiff's testimony was inconsistent because the additional pay could have been reimbursement for unused vacation time or some other taxable income. Since the ALJ settled this issue by finding plaintiff not disabled from February 25, 2017, through May 26, 2017, it is unclear how a change in the alleged onset date would discredit plaintiff's subjective symptom testimony.[6]

Therefore, plaintiff's work activity is not a specific, clear, and convincing reason for rejecting plaintiff's subjective symptom testimony.

**B.  Lay Witness Evidence**

Plaintiff argues the ALJ failed to provide germane reasons for rejecting the testimony of Kristine S., plaintiff's wife. Dkt. 8 at 11. Specifically, plaintiff argues that Kristine S.'s testimony was probative because it was based on her observations of his day-to-day activities, which is not something provided by the medical providers. Dkt. 8 at 12.

The ALJ rejected Kristine S.'s testimony because her observations "are unpersuasive for the same reasons that the claimant's allegations are unpersuasive." AR 30. The ALJ further found that her observations "are inconsistent with and unsupported by other evidence. *Id*.

---

[6] The ALJ further cited a single progress note from a July 2018 nutrition counseling session noting that plaintiff stated that he was taking his lunch to work. AR 23. However, there are no earning statements for work during this period. *See* Activities of Daily Living discussion, *supra*.

Where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

In this case, however, the Court concluded that the ALJ did not provide specific, clear, and convincing reasons for discounting plaintiff's testimony. Thus, where the ALJ provided the same reasons for discounting the lay witness testimony in which the Court has determined to be inadequate to discount plaintiff's testimony, the ALJ has failed to provide germane reason for discounting the law witness testimony. *See Donovan B. v. Acting Comm'r of Soc. Sec.*, No. 3:22-CV-5425-TLF, 2023 WL 1879517, at *7 (W.D. Wash. Feb. 10, 2023) (concluding that the similarity between plaintiff's testimony and the statements of these lay witnesses cannot serve as a germane reason for discounting the lay witnesses where the ALJ re-stated the same reasons for discounting plaintiff's testimony, which the Court determined to be inadequate). Therefore, on remand, the ALJ shall reconsider the lay witness statements when reconsidering plaintiff's testimony.

The 2017 regulations state that an ALJ is "not required to articulate how [they] considered evidence from nonmedical sources" using the same criteria that an ALJ uses for evaluating evidence from medical sources. *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Court acknowledges the Ninth Circuit has not yet published a decision regarding whether the pre-2017 standard -- requiring 'germane' reasons to reject lay witness testimony -- may eventually be applied by the Ninth Circuit to cases where the application was filed under the 2017 regulations. *Cody K. v. Comm'r of Soc. Sec.*, No.

C22-5288 TLF, 2023 WL 315240, at *5 (W.D. Wash. Jan. 19, 2023) (citing *Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at * 2 (9th Cir. Dec. 7, 2022) (unpublished) (applying "germane reasons" standard to ALJ's evaluation of third-party function report from claimant's husband); *Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at * 4 n. 4 (9th Cir. Nov. 23, 2022) (unpublished)).

### C. Medical Opinion Evidence

Plaintiff argues the ALJ erred in rejecting the opinion of a consultative examiner, John Richard Coe, DO, FAAFP, dated February 12, 2021. Dkt. 8 at 12-16; AR 10 at 5-6.[7] Plaintiff argues that Dr. Coe's opinion is not inconsistent and is supported by the record. *Id*.

Under the 2017 regulations that apply in this case, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider every medical opinion or prior administrative finding in the record and evaluate each opinion's persuasiveness. *Id*. ALJ's must explain with specificity how he or she considered the two most important factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). Thus, under the new regulations "an ALJ cannot reject medical opinions or prior administrative medical findings as inconsistent or unsupported without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 404.1520c.

---

[7] Plaintiff contends that the ALJ rejected Dr. Coe's opinion because the ALJ found Dr. Platter's opinion more persuasive. AR 8 at 16; AR 10 at r. Plaintiff further raises the question of whether Dr. Platter was an adjudicator or a state agency reviewing consultant. *Id*. The Court need not address this issue since the Court has determined that the medical evidence should be reviewed anew.

The Court has determined that the ALJ harmfully erred in his assessment of plaintiff's subjective symptom testimony and lay witness testimony. *See* Sections A and B, *supra*. Because plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of plaintiff's testimony and lay witness testimony may impact the ALJ's consideration of the medical opinion evidence, the ALJ shall also reevaluate the opinion evidence from Dr. Coe.

Because the ALJ's reconsideration of plaintiff's subjective symptom testimony, lay witness testimony, and the medical opinion of Dr. Coe will ultimately impact the determination of plaintiff's RFC, the ALJ's errors are harmful. See *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless).

### D.  Remedy

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the Court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the Court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where:

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district Court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating plaintiff's subjective testimony, lay witness testimony and the medical opinion evidence from Dr. Coe. The Court has found several errors in the ALJ's evaluation of plaintiff's statements about symptoms and limitations. Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as conflicts in plaintiff's testimony and the medical evidence. Therefore, this matter should be reversed for further administrative proceedings, including a *de novo* hearing, not with a direction to award benefits. *See id.*

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 18th day of April, 2023.

Theresa L. Fricke
United States Magistrate Judge